John L. BREWER, Plaintiff-Appellee Cross-Appellant,

v.

MEMPHIS PUBLISHING COMPANY, INC., Defendant-Appellant Cross-Appellee.

Anita W. BREWER, Plaintiff-Appellee Cross-Appellant,

v.

MEMPHIS PUBLISHING COMPANY, INC., Defendant-Appellant Cross-Appellee.

No. 75–1073.

United States Court of Appeals, Fifth Circuit.

Sept. 13, 1976.

---

Robert A. Weems, Frank E. Everett, Jr., Vicksburg, Miss., Russell E. Leasure, Cleveland, Ohio, for Memphis Pub. Co., Inc.

J. Mack Varner, R. Louis Field, John W. Prewitt, Vicksburg, Miss., for plaintiffs-appellees.

Before DYER, RONEY and TJOFLAT, Circuit Judges.

RONEY, Circuit Judge:

Elvis Presley called television singer Anita Wood his "No. 1 girl" in 1957. By 1972 she was leading a private domestic life as a mother and housewife in Pass Christian, Mississippi, when defendant's newspaper, *The Commercial Appeal*, published the following bit of false gossip:

> FLICKERING FLAME: Back in 1957 *Anita Wood*, who came from Jackson, Tenn., to Memphis to sing on TV, was *Elvis Presley's* "No. 1 girl." This week as Elvis closed his month-long show at the Las Vegas Hilton, Miss Wood stopped by the hotel for what appeared to be a "'reunion" of two old friends. Elvis recently filed for divorce from his wife of five years, Priscilla. Miss Wood is divorced from former Ole Miss football star *Johnny Brewer.*

Anita Wood Brewer had not been in Las Vegas as reported. There had been no "reunion" with Elvis Presley. She was not divorced from former Ole Miss football star Johnny Brewer.

Eight months later the Brewers demanded and received this retraction:

CORRECTION—On Sept. 8 of last year an item in this column reported that the former *Antia Wood*, now Mrs. John Brewer, had been in Las Vegas, Nev., a few days previously and had stopped by the Las Vegas Hilton to visit *Elvis Presley*, an old friend, who was entertaining there. That apparently was a case of mistaken identity, because Mrs. Brewer says she was not in Las Vegas on or anywhere near that date. The item also said she and former Ole Miss football star *Johnny Brewer* were divorced, which was incorrect. The Commercial Appeal regrets the error.

The Brewers then sued the paper for libel. The suits were brought in federal court as a diversity action. The first jury found the defamation worth $400,000 to each plaintiff for a total verdict of $800,000. District Judge Cox thought that excessive and granted a new trial on damages alone, where he directed a verdict as to liability on the basis of the first jury verdict. The second jury gave $250,000 to Mrs. Brewer and $150,000 to her husband. The plaintiffs accepted a reduction in these verdicts by way of remittitur to $100,000 and $50,000 respectively. On the ground that liability should have been an issue in the second trial in the context of the differing standard to be applied to this First Amendment case depending on whether plaintiffs were public or private figures, we reverse and remand for a new trial.

The news squib developed out of a telephone call to *The Commercial Appeal's* entertainment reporter James Kingsley from his sister, who resided in Las Vegas, Nevada. The sister, a reliable source of information in the past, informed Mr. Kingsley that a girl identifying herself as Anita Wood from the Memphis area had recently visited the dress shop in the Las Vegas Hilton Hotel. Anita Wood had enjoyed public acclaim as a Memphis area TV and radio personality in the 50's and was briefly in the national limelight as an actress and entertainer. At one time she was a frequent companion of nationally known entertainer Elvis Presley who called her his "number one girlfriend." When reporter

**702**

Kingsley received his sister's call, Presley was entertaining in the same Las Vegas hotel. Kingsley discussed this coincidence with the writer of the "People" column who expressed interest in running a story on the subject. Mr. Kingsley then called his sister again to recheck the information. He ascertained that his sister knew the clerk in the dress shop who had participated in the conversation with the individual identifying herself as Anita Wood.

A check of the newspaper files revealed that Anita Wood had, subsequent to her celebrated relationship with Mr. Presley, married Johnny Brewer, a former Ole Miss and professional football player whose professional career concluded in 1970. Kingsley checked with a former teammate and with others who had followed both Brewer careers. From these conversations the reporter developed the impression that the couple was separated and divorced. Thereupon the September 8, 1972 article was printed.

■ Although liability for libel must be established under state law, the First Amendment dictates the minimum contours within which the state law must fit in cases involving the press. The First Amendment overlay on the law of libel has developed certain established principles. A person who is a public official may recover in a libel action *only* upon clear and convincing proof that the defamatory falsehood was published with knowledge of its falsity or with reckless disregard for its truth. *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). This same stringent standard applies to libel actions brought by persons who are "public figures," even though they are not public officials. *Curtis Publishing Co. v. Butts*, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967). A state would, of course, be free to adopt a more severe standard for recovery in such cases if it chose to do so. But it could not permit recovery by a public official or public figure plaintiff on any showing less than that required by *New York Times* and *Curtis Publishing Co.*

■ As to a private individual, however, the state may define any standard of liability it may choose for a publisher or broadcaster of defamatory falsehood so long as it does not impose liability without fault. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974). *Gertz* also established the following: Only compensatory damages may be awarded to a successful private defamation plaintiff who does not demonstrate liability under the demanding standard set forth in *New York Times*. All such awards must be supported by competent evidence concerning the injury, although there need be no evidence which assigns an actual dollar value to the injury. Thus, a state may not permit recovery of presumed or punitive damages to either a private or a public plaintiff unless there is a showing of knowledge by the defendant of falsity or reckless regard for the truth.

■ The case at bar must be reversed and remanded for retrial in light of this law. At the first trial, before the decision in *Gertz*, the Mississippi law allowing liability without fault, and damages without injury, upon the publication of a falsehood or libel *per se*, formed the basis of the instructions to the jury. The question of whether Anita Wood Brewer and John Brewer were public figures or private persons was never directly addressed. By accepting as conclusive at the second trial the first jury's verdict against the defendants as a resolution of liability, the court relied on a jury decision made upon a state standard of liability without fault, proscribed by *Gertz* and *Time, Inc. v. Firestone*, 424 U.S. 448, 96 S.Ct. 958, 47 L.Ed.2d 154, 44 U.S.L.W. 4262 (1976). There could be no liability without fault even if the Brewers were private individuals and proved actual injury.

■ Also in the second trial, although not instructing that *punitive* damages could be awarded, the trial court did state that "under Mississippi law the article which is in Flickering Flame is libelous per se or libelous on its face, and the law presumes that the Plaintiffs have suffered actual damages as naturally and ordinarily flow

from such publication." This instruction is contrary to the holding in *Gertz* which requires a showing of actual, not presumed, damages. "[W]e hold that the States may not permit recovery of presumed or punitive damages, at least when liability is not based on a showing of knowledge of falsity or reckless disregard for the truth." *Gertz v. Robert Welch, Inc., supra,* 418 U.S. at 349, 94 S.Ct. at 3011.

█ This case raises several important questions which, we think, should first be addressed by the trial court on the evidence submitted by the parties confronting the law as it has now been developed in *Gertz* and *Firestone.* The initial question is, of course, whether Anita Wood Brewer or John Brewer, or both, are public figures within the context of the above referred to Supreme Court cases. An important question relevant to this issue left open by the presently decided cases concerns the extent to which a person who has been a public figure in the past can retreat to private status and obtain the benefit of the lesser standard of proof required for damages for injury from libel.

Once the constitutional standard has been determined, the Mississippi law will then have to be established because it must always be remembered that this is a state cause of action which is affected by the United States Supreme Court decisions only when the state law runs afoul of the Constitution.

Although there might be some merit in our deciding the constitutional questions as they apply to the facts that appear in the record, for guidance of court and counsel on retrial, we think the case can be better handled by remanding to the trial court for its initial determination of all the issues presented in this case. To do otherwise would have us deciding constitutional issues that have never been passed upon by the trial court, nor directly addressed by the parties in the presentation of evidence.

Both parties, of course, seek from us a decision in their favor. The plaintiffs contend that the judge in effect found reckless disregard for the truth by the defendant which would support the jury award for more than compensatory damages whether plaintiffs were public or private figures. But this is a jury case. The evidence is far from being sufficient to justify a directed verdict and defendant is entitled to have a jury, not the judge, resolve the liability and damage issues under proper instructions as to the law. Contrary to the plaintiffs' argument in this Court, the court at the first trial, indeed at the only trial on liability, did not charge the jury to adhere to a standard of liability requiring fault for assessment to compensatory damages. The court only instructed that malice was required for punitive damages.

The defendant, on the other hand, contends that the plaintiffs should be judged by this Court to be public figures. It argues we can determine from the record that defendant is entitled to a judicial decision that the proof does not rise to the constitutional level required of public figures by *New York Times.* Particularly, defendant argues that the Supreme Court has opened the way for us to make a decision on the question of fault by the following language in *Time, Inc. v. Firestone:*

> The failure to submit the question of fault to the jury does not, of itself establish noncompliance with the constitutional requirements established in *Gertz,* however. Nothing in the Constitution requires that assessment of fault in a civil case tried in a state court be made by a jury, nor is there any prohibition against such a finding being made in the first instance by an appellate, rather than a trial, court. The First and Fourteenth Amendments do not impose upon the States any limitations as to how, within their own judicial systems, factfinding tasks shall be allocated. If we were satisfied that one of the Florida courts which considered this case had supportably ascertained petitioner was at fault, we would be required to affirm the judgment below.

424 U.S. at 461, 96 S.Ct. at 969, 44 U.S. L.W. at 4266. In the *Firestone* case, however, the Supreme Court was deciding only

the constitutional issue. It held that as a constitutional matter factfinding in the state court system need not be restricted to the trial court. We have the entire case in the federal system before us for review, however, not just constitutional issues. The federal system has long espoused the virtue of having facts first found and fault first established in the trial court.

We, therefore, reverse the judgments entered in both cases, and remand for new trials as to liability and damages.

REVERSED AND REMANDED.